In the Matter of the Petition of ISTH-MIAN LINES, INC., as Claimant of the S.S. STEEL AGE, for a Writ of Mandamus or Prohibition

v.

Honorable George ROSLING, Judge of the United States District Court for the Eastern District of New York.

Motion No. 8, Docket 29811.

United States Court of Appeals Second Circuit.

Argued June 21, 1965.

Decided May 24, 1966.

Jacob Rassner, New York City (Donald D. Olman, New York City, on the brief), for libelant.

Robert P. Hart, New York City (Kirlin, Campbell & Keating, Charles N. Fiddler, New York City, on the brief), for petitioner.

Before MOORE and ANDERSON, Circuit Judges, and LEVET, District Judge.

MOORE, Circuit Judge:

Isthmian Lines, Inc., as Claimant of the S.S. Steel Age, seeks a writ of mandamus or prohibition against the Honorable George Rosling of the United States District Court for the Eastern District of New York, by means of which writ it desires to have a pending libel dismissed

because of alleged jurisdictional defects. Only a detailed chronological review of the prior proceedings will adequately disclose the state of confusion which surrounds this litigation from its inception to date.

*March 22, 1962:* Charles Richard Washington injured on "Steel Age."

*March 23, 1962:* Washington died, leaving surviving (allegedly) his widow Estella Habersham Washington (Estella) and "next-of-kin, Rebecca, Charles Richard, Don and Vivian."

*February 10, 1963:* The widow, Estella, died.

*May 20, 1963:* Estella Habersham Washington (allegedly) appointed Administratrix of the Washington Estate in South Carolina.

*July 25, 1963:* Libel by Estella Habersham Washington filed for pain, suffering and death of decedent.

*August 2, 1963:* Libel returned unexecuted at the request of the attorney for libelant.

*March 27, 1964:* Letters of Administration of Estate (allegedly) issued to daughter, Rebecca Washington.

*May 1, 1964:* Motion to substitute Rebecca for Estella under Rule 23, Admiralty Rules upon grounds (1) that the daughter Rebecca had after her mother's death unwittingly signed her mother's name to the papers appointing Estella as Administratrix; and (2) that Rebecca was then the Administratrix. (The affidavit of the South Carolina Probate Judge that when he granted letters on May 20, 1963, to Estella (deceased), he actually intended to grant them to the daughter Rebecca is scarcely a clarifying statement.)

*May 26, 1964:* Judge Rosling in an opinion requested "supplementary data."

*October 9, 1964:* Supplemental Memorandum by Judge Rosling holding that substitution of Rebecca for Estella is "a correction of the misnomer" and that in the original complaint Estella was "printed whereas Rebecca was intended." Leave to file an amended libel containing Rebecca's name as Administratrix was granted.

*November 9, 1964:* Amended libel by Rebecca filed.

*December 16, 1964:* Motion to strike amended libel denied.

*February 9, 1965:* Motion for summary judgment striking libel as not timely brought.

*April 23, 1965:* Opinion, Judge Rosling, denying motion.

*May 7, 1965:* Order, Judge Rosling, denying motion.

Isthmian, in substance, takes the position that the purported issuance of letters of administration to Estella some months after her death and the filing of the libel purportedly instituted by her in such capacity were nullities as was the subsequent amendment purporting to substitute Rebecca as the Administratrix in lieu of Estella; that the applicable statute of limitations is two years; that the ("amended") libel by Rebecca was filed more than two years after the accident and death; and that Judge Rosling in granting leave to amend exceeded his judicial powers.

The function of a statute of limitations (the focal issue underlying the procedural steps herein outlined) is not only to bring about a condition of repose but also to enable a potential defendant to have timely notice of any alleged dereliction. Here the libel filed on July 25, 1963 (also alleged as June 26, 1963) was well within the two-year period. It was captioned in the alleged name of the Administratrix of the Estate of Charles Richard Washington as well as herself "individually," although this latter status was a nullity because of her prior decease. The respondent thus had notice that the "Estate" was suing and notice of the facts upon which the claim was based. Although "a proceeding begun in the name of a deceased plaintiff is a nullity" (Karrick v. Wetmore, 22 App.D.C. 487), the Estate here was not deceased. Probably most of the difficulty arises from the concept that a mis--

nomer was being corrected. Actually, the situation was that of an Estate suing which did not have a then-appointed administrator. However, it was under the aegis of the Probate Court.

The circumstances which gave rise to the confusion surrounding the institution of this suit may well justify the position taken by Judge Rosling. On the other hand, Isthmian should not be foreclosed at trial or at a separate hearing, if the trial court should grant one, from developing any state of facts available to dispute the facts upon which the decision to allow the suit to be carried on by Rebecca, as Administratrix, rests. It is sufficient for the present to deny the petition for a writ of mandamus or prohibition, on the grounds that the petitioner has not demonstrated that the trial court acted in excess of his judicial powers, and, in response to Isthmian's request to consider the matter as an appeal, to hold that the order is non-appealable.